UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
JOSE JIMENEZ,                 )
         Petitioner,          )
                              )
v.                            )    Civil Action _
                              )    No. 07-12242-DPW
LUIS SPENCER,                 )
         Respondent.          )
                              )
```

MEMORANDUM AND ORDER
July 14, 2009

Petitioner Jose Jimenez ("Jimenez") seeks federal habeas corpus relief from his Massachusetts state court convictions. On January 16, 2003, a jury in Suffolk Superior Court convicted Jimenez of trafficking in 200 grams or more of heroin and conspiracy to traffic in heroin.  He is serving a sentence in state prison of not more than fifteen years and one day and not less than fifteen years for the trafficking in heroin; the conspiracy conviction was placed on file.

Jimenez presses one basis for habeas relief.  He contends that he was denied his constitutional right to effective assistance of counsel when his attorney failed to move to suppress a pager seized during his arrest.  The Respondent contends that Jimenez's claim fails to meet the *Kimmelman* test for claims based on alleged ineffective representation in connection with a Fourth Amendment illegal search and seizure issue.  The matter is before me on the Respondent's motion to dismiss pursuant to Fed. R. Civ. P. 12(c).

## I. BACKGROUND

**A. Factual Background**

    This court must presume that state court determinations of
fact are valid.  28 U.S.C. § 2254(e)(1); *Teti v. Bender*, 507 F.3d
50, 57 (1st Cir. 2007).  The following facts are drawn from the
state court's factual findings, and from other documents in the
record not in dispute.

    On May 3, 2000, Boston Police Officers Terrance O'Toole and
Rosendo Rentas received a tip from police informant, Rafael
Perez.  *Commonwealth v. Jimenez*, No. 06-P-1966, 2007 WL 1946545,
at *1 (Mass. App. Ct. July 3, 2007).  Perez informed the officers
that on May 4, 2000, a female would be transporting heroin on a
bus from New York to Boston and two other individuals would
follow the bus in a car.  *Id.*  Perez told the officers that once
the woman arrived in Boston, she would take a cab to the
International Restaurant in Jamaica Plain where she would meet
him and the two men who had followed the bus from New York.  *Id.*

    On May 4, 2000, a female later identified as Candida
Zorrilla,[1] arrived in Boston by a bus from New York. *Id.* She took
a taxi to the International Restaurant. *Id.* Forty minutes later,

--------

    [1] Candida Zorrilla's surname is spelled as "Zorilla" in
several documents in the record. Based on her testimony at trial,
the correct spelling is Zorrilla.

she was joined by two men later identified as Marco Diaz[2] and
Petitioner Jose Jimenez. *Id.* Diaz and Jimenez had arrived
together in a car with New York license plates. *Id.* The car was
registered to Jimenez.[3] *Id.*

Zorrilla, Diaz, and Jimenez were in the restaurant for
roughly ten minutes before leaving together. *Id.* Perez then
drove by the three defendants in an undercover car operated by
Boston Police Sergeant Struthers. *Id.* Perez waved and led the
three to a nearby street where other Boston Police officers
intercepted them.[4] *Id.* Officer O'Toole ordered Zorrilla to exit

_____

[2] Both parties agree that Marco Diaz is the individual also
known to Perez and the Boston Police as "Jerry L" or "Jariel."
Marco Diaz is referred to as "Marceo Diaz" in the trial
transcript and "Marco Diaz" in the trial judge's order denying
Jimenez a new trial and in the appellate court opinions.

[3] The record is not clear whether the Boston Police Officers
"ran the plates" before Jimenez's arrest or after.

[4] In his various briefs, Jimenez asserts that all three
defendants were under arrest at the moment their vehicle was
stopped. Although the Massachusetts Appeals Court did not
explicitly find otherwise, language in *Commonwealth v. Jimenez*,
No. 06-P-1966, 2007 WL 1946545, at *1 (Mass. App. Ct. July 3,
2007) could be construed to indicate that the arrest occurred
after the search. At the motion hearing, Officer O'Toole
testified on direct examination that he first conducted a search
of Zorrilla's handbag and then placed all three defendants under
arrest. However, on cross-examination, Officer O'Toole testified
that all three defendants were under arrest at the moment the
Boston Police stopped the car and that the searches of the
handbag and Jimenez's person were not *Terry* stops. O'Toole
explicitly testified that Zorrilla was under arrest at the time
he seized her pocketbook. I credit Jimenez's account and Officer
O'Toole's explicit testimony that all three defendants were under
arrest at the moment the car came to a stop.

the rear passenger side of the car and seized her purse.  Upon
opening the purse, he observed heroin.  *Id.*  An officer at the
scene seized from Jimenez a pager on which Perez's cell phone
number appeared.  *Id.*

**B. Procedural History**

Jimenez was indicted on June 22, 2000.  On May 20, 2002, his
attorney filed a motion to suppress "all evidence, to: wit: 200
grams of heroin."  He argued the "aforementioned evidence" was
obtained in violation of Jimenez's right to be free from
unreasonable search and seizures under Article Fourteen of the
Declaration of Rights of the Massachusetts Constitution and the
Fourth Amendment of the United States Constitution.  The motion
did not reference the seized pager as an item for which Jimenez
sought suppression.  The trial judge denied the motion and issued
a memorandum on September 24, 2002.  That memorandum does not
address the seized pager.

In 2003, a jury in Suffolk Superior Court convicted Jimenez
of trafficking in 200 or more grams of heroin in violation of
M.G.L. c. 94C, § 32E(c)(4) and of conspiracy to traffic in heroin
in violation of M.G.L. c. 94C, §40.  Jimenez was sentenced to
state prison.

In 2005, the petitioner appealed to the Massachusetts
Appeals Court, arguing that his motion to suppress the pager
should have been allowed, and alternatively, that he received

-4-

ineffective assistance of counsel due to the failure of his attorney to expressly move to suppress the pager.

In his brief to the Massachusetts Appeals Court, Jimenez conceded that the motion to suppress evidence had included only the 200 grams of heroin found in Zorrilla's handbag.  He further conceded that there is nothing in the trial or motion hearing transcripts that suggest the pager was to be included in the evidence Jimenez and his attorney sought to suppress. Consequently, the court dismissed the argument that the motion to suppress the pager should have been granted, concluding that it had been waived at trial.  *Commonwealth v. Jimenez*, No. 05-P-869, 2006 WL 988037, at *1 (Mass. App. Ct. Apr. 14, 2006).

Turning to the issue of ineffective assistance of counsel, the Appeals Court declined to reach the claim.  The Appeals Court found that the trial record offered insufficient factual basis for appellate review of the ineffective assistance claim and stated that a claim of this kind was best left to the trial judge on a motion for a new trial.  *Id.*  The Appeals Court consequently affirmed the trial court's decision on direct review.  *Id.* at 2.

Jimenez then returned to the Suffolk Superior Court and filed a motion for a new trial.  Jimenez argued that his trial counsel was ineffective for failing to seek suppression of the pager seized during his arrest.  The trial judge, who had also presided over the criminal trial, denied the motion.

-5-

Jimenez appealed to the Massachusetts Appeals Court for review of the denial of his motion for a new trial.  His appeal was rejected for failure to demonstrate that a motion to suppress the pager at trial would have been successful if it had been pressed by his trial counsel.  *Jimenez*, 2007 WL 1946545, at *2.

Petitioner then filed an application for leave to obtain further appellate review by the Supreme Judicial Court of Massachusetts.  The application was denied. *Commonwealth v. Jimenez*, 449 Mass. 1110 (2007).

Having exhausted available state court remedies, the petitioner filed the instant pro se habeas petition pursuant to 28 U.S.C. § 2254 in December 2007.  The Respondent now moves this Court to dismiss the petition for habeas corpus pursuant to Fed. R. Civ. P. 12(c).

## II. STANDARD OF REVIEW

### A. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) permits either party; "[a]fter the pleadings are closed but within such time as not to delay the trial, [to] move for judgment on the pleadings." Judgment on the pleadings may not be entered unless it appears beyond any doubt that the non-moving party can prove no set of facts in support of his claim which would entitle him to relief. Fed. R. Civ. P. 12(c).  *See also Int'l Paper Co. v. Town of* Jay, 928 F.2d 480, 482-83 (1st Cir. 1991); *Santiago de Castro v.*

-6-

*Morales Medina*, 943 F.2d 129, 130 (1st Cir. 1991).[5]

### B. Habeas Corpus

The Antiterrorism and Effective Death Penalty Act ("AEDPA") describes the circumstances in which Jimenez will be able to prove facts sufficient to warrant habeas relief.  AEDPA provides that a district court may not grant the writ of habeas corpus based on a claim that was "adjudicated on the merits" in a state court proceeding unless the state court decision was (1) "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" in the state court proceedings.  28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established

---

[5] A Rule 12(c) motion that relies on a "plethora of evidentiary submissions" may be converted by the Court into a motion for summary judgment if the party opposing the motion has been given adequate notice of the conversion and a reasonable opportunity to respond. *Gulf Coast Bank and Trust Co. v. Reder*, 355 F.3d 35 (1st Cir. 2004). *See e.g. McCord v. Horace Mann Ins. Co.*, 390 F.3d 138 (1st Cir. 2004) (affirming the district court's decision to convert a 12(c) motion to a motion for summary judgment where movant filed and relied upon evidentiary submissions not in the pleadings and the non-movant added other non-pleading materials in response).  This precedent affords permission to this court to convert the motion, but falls short of mandating I do so.  Although the Respondent has indeed submitted a "plethora of evidentiary submissions," they are submissions from the underlying state proceedings, which have been incorporated by reference in the pleadings before me.  Consequently, I will act on motion pursuant to Rule 12(c) without reaching Rule 56.

federal law if it is "substantially different from relevant precedent" of the Supreme Court or where the state court faced facts materially indistinguishable from a Supreme Court decision but came to a contrary result. *Williams v. Taylor*, 529 U.S. 326, 405-06, (2000). *See also Sleeper v. Spencer*, 510 F.3d 32, 37-38 (1st Cir. 2007); *Mastracchio v. Vose*, 274 F.3d 590, 597 (1st Cir. 2001).

An unreasonable application will be found where the state court employs the correct legal principles, but

> (I) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.

*Foxworth v. Amand*, No. 08-1751, 2009 WL 1844276, at *6 (1st Cir. 2009 June 29, 2009) (*quoting Sleeper v. Spencer*, 510 F.3d at 37-38). The federal court's standard when evaluating state court findings is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, (2001) (per curiam) (*citing Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997)). The "mere fact that there was some error or that the state decision was incorrect is not enough" to establish an unreasonable application of law. *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002).

In order to overturn a state court's determination, the

-8-

federal court must find that the state court's analysis was not merely erroneous, but also objectively unreasonable. *Horton v. Allen*, 370 F.3d 75, 80 (1st Cir. 2004). Even if a state court's analysis is determined to be an unreasonable application of clearly established law, the petitioner must demonstrate that the error resulted in a "substantial and injurious effect or influence in determining the jury's verdict." *Foxworth*, 2009 WL 184426, at *6 (*quoting Delaney v. Bartee*, 522 F.3d 100, 105 (1st Cir. 2008)). Even where the petitioner presents facts that make the state court's determination a close call, the federal court must give deference to the state court. *Id*.

### III. Analysis

Jimenez's single claim is that he was denied effective assistance of counsel when his trial attorney failed to move to suppress the pager seized during Jimenez's arrest. In criminal cases, the right to counsel is fundamental because it ensures the fairness and legitimacy of our adversarial system. *Kimmelman v. Morrison*, 477 U.S. 365, 376 (1986).

When engaged to determine whether counsel's performance was effective under the Sixth Amendment, the court must ask "whether counsel has brought 'to bear such skill and knowledge as will render the trial a reliable adversarial testing process.'" *Scarpa v. DeBois*, 38 F.3d 1, 8 (1st Cir. 1994) (*quoting Strickland v. Washington*, 466 U.S. 668, 688, (1984), *cert.*

*denied*, 513 U.S. 1129 (1995)).  The inquiry has two prongs:
performance and prejudice. In order to succeed on his claim,
Jimenez must show both that his counsel's performance fell below
an objective standard of reasonableness and, but for counsel's
errors, there is a reasonable probability that "the result of the
proceeding would have been different." *Woodford*, 537 U.S. at 23.
*See also Strickland*, 466 U.S. at 668.  The court must review the
performance "not in hindsight, but based on what the lawyer knew,
or should have known, at the time his tactical choices were made
and implemented." *United States v. Natanel*, 938 F.2d 302, 309
(1st Cir. 1991), *cert. denied*, 502 U.S. 1079 (1992).[6]  Jimenez's
attorney's actions are to be examined "in light of the whole
record, including the facts of the case, the trial transcript,
the exhibits, and the applicable substantive law." *Scarpa v.
Dubois,* 38 F.3d at 15.  Finally, an attorney's performance is

---

[6] At the hearing on the motion for new trial, Jimenez offered
an affidavit of his trial attorney, Joseph M. Griffin, Jr.  In
the affidavit Griffin states that there was no tactical or
strategic reason for failing to move to suppress the pager.  The
motion judge for the new trial motion was also the trial judge.
She noted in her memorandum an order denying a new trial that the
trial record indicates that there was, indeed a tactical decision
regarding the pager.  Specifically, she wrote, "Attorney Joseph
M. Griffen [sic], Jr. discussed the pager at the onset of the
trial.  He conceded that the pager belonged to the defendant, but
noted nothing in the evidence suggested that the defendant knew
that his number was given to Perez.  This seems to indicate a
tactical decision to deal with the pager."  While this may
evidence a tactical decision with regard to dealing with the
pager in evidence, it does not shed any light regarding a
strategic judgment not to move to suppress the pager.  No such
judgment seems to have been exercised.

-10-

reviewed with the "strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman*, 477 U.S. at 381 (internal citation omitted).

Jimenez's claim of ineffective assistance of counsel is predicated on a Fourth Amendment issue. He contends that the pager was seized in the course of an arrest lacking probable cause and as a result, the search resulting in the seizure of the pager was illegal.

In such cases, the ineffectiveness claim is controlled by both the standards of review set forth by the AEDPA and by the *Kimmelman* test for ineffective assistance of counsel based on counsel's alleged failure to litigate a Fourth Amendment claim. *Kimmelman*, 477 U.S. at 376 (putting a gloss on the *Strickland* standard when the ineffectiveness claim is predicated on a Fourth Amendment issue). "[F]ailure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman*, 477 U.S. at 384. Rather, in order to demonstrate actual prejudice in such a case, the petitioner must show that both "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman*, 477 U.S. at 375.

Inquiries into the effectiveness of trial counsel present mixed questions of law and fact. *Strickland*, 446 U.S. at 698;

-11-

*Scarpa*, 38 F.3d at 9.   In Section 2254 cases, the federal courts review a mixed question of law and fact *de novo*.   *Scarpa*, 38 F.3d at 9.   However, where the state court applied the correct federal standard, I may not answer the question of ineffective assistance of counsel *de novo*.   *Phoenix v. Matesanz*, 233 F.3d 77, 82 (1st Cir. 2000).   *See Horton v. Allen*, 370 F.3d at 80.   Instead, I must assess whether the state court's application of *Strickland* and *Kimmelman* to Jimenez's ineffective assistance claim was objectively unreasonable.   *See Phoenix*, 233 F.3d at 82-83.

The Massachusetts Appeals court reviewed Jimenez's ineffective assistance of counsel claim under *Commonwealth v. Saferian*, 366 Mass. 89 (1974), the state's equivalent of the *Strickland* standard.   *Lynch v. Ficco*, 438 F.3d 35, 48 (1st Cir. 2006).   The Appeals Court also employed the *Kimmelman* test by reference to *Commonwealth v. Fletcher*, 52 Mass. App. Ct. 166 (2001), a case that adopted the federal standard of review for ineffective assistance of counsel claims arising from failure to litigate a Fourth Amendment issue.   *Jimenez*, 2007 WL 1946545, at *2.   The Massachusetts Appeals Court also relied on *Commonwealth v. Cutts*, 444 Mass. 821, 830 (2005) which provides that when a claim of ineffective assistance of counsel relies on counsel's failure to move to suppress, the claimant must demonstrate that the motion would have been granted and that there was reasonable possibility that the verdict would have been different if the

motion had been granted.  I find that the Massachusetts Appeals Court, while relying on Massachusetts state case law, employed the appropriate federal legal principles as set forth in *Strickland* and *Kimmelman*.

**1. Performance: The Merits of the Fourth Amendment Claim**

Jimenez asserts that he was under arrest at the moment the vehicle in which was a passenger came to a stop and that subsequent to the vehicle stopping, an officer searched his person and seized a pager on which the informant's phone number appeared.  He contends that the police did not have probable cause to arrest him, and therefore, the seized pager was discovered in an illegal search and seizure.

The Massachusetts Appeals Court found that the evidence presented at the motion hearing reasonably supported the inference that Jimenez was more than a mere bystander.  *Jimenez*, 2007 WL 1946545, at *2.  The Court specifically found that "[t]he information provided by Perez, substantially corroborated by police surveillance, established probable cause that all three codefendants were involved in the illegal distribution of heroin." *Id.*  The trial court judge, in deciding the motion for a new trial, concluded that Jimenez had not successfully demonstrated that a motion to suppress the pager would have been successful.  The Appeals Court found no error in that determination and therefore denied Jimenez's appeal.  *Id.*

-13-

Jimenez concedes that the police had probable cause to arrest Diaz and Zorrilla and does not press an objection to the police conducting a search of the car incident to those arrests. However, he argues that the search was permissible only within specific bounds.  He relies on *Wyoming v. Houghton*, 526 U.S. 295 (1999) for the proposition that even if the police had probable cause to search the vehicle, the permissible search is limited to those objects capable of concealing the object of the search. *Cf. California v. Acevedo*, 500 U.S. 565 (1991) (holding that police may search containers within a car if they believe that container holds evidence, even if they do not have probable cause to search the vehicle as a whole).  Jimenez argues that the pager is not capable of concealing 200 grams of heroin.

*Houghton* is distinguishable.  In *Houghton*, the police officer's search of the car, and the subsequent discovery of drug paraphernalia, arose out of a routine traffic stop.  *Houghton*, 526 U.S. at 298.  In that case, the court held that where police officers have probable cause to believe there are drugs in a car, they may search passengers' belongings that are capable of containing the drugs sought.  *Id.* at 307.  These facts are easily distinguished from the facts presented here.

The evidence supports the factual finding that the pager's seizure arose, not only out of probable cause to believe there were drugs in the car and/or on the persons of the occupants,

including Jimenez,[7] but as a result of a search incident to Jimenez's arrest.  Furthermore, the pager was recovered from Jimenez's person, not from the vehicle itself.  As such, the search and seizure resulting in the pager's recovery was not as a result of a simple routine traffic stop and search as in *Houghton*; rather, the pager was discovered in the course of a search incident to arrest for a drug trafficking conspiracy.

In order to determine the constitutionality of the pager's seizure on the alternative grounds of search incident to arrest, I must now address the lawfulness of Jimenez's arrest and the lawfulness of the search as it resulted from that arrest.

Probable cause is not a calculus of exactitudes or definitive rules; rather, "we deal with probabilities." *Brinegar v. United States*, 838 U.S. 160, 175 (1949).  The calculus is that of "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id*.  The standards for establishing probable cause are designed to protect "citizens from rash and unreasonable interferences with privacy and unfounded charges of crime" with the state's interest in giving "fair leeway for enforcing the law in the community's protection." *Brinegar*, 838 U.S. at 176.

To determine whether police have probable cause to arrest an

---

[7] Jimenez concedes that the police officers had probable cause to arrest Diaz and Zorrilla.

individual, the Supreme Court directs that I "examine the events leading up to the arrest, and . . . decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (*quoting Ornelas v. United States*, 517 U.S. 690, 695 (1996)). *See also Brineger*, 838 U.S. at 175 (holding that "where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed") (*quoting Carroll v. United States*, 267 U.S. 132, 162 (1925). The test instructs that in order to determine the existence of probable cause, the court must employ a "totality of the circumstances analysis that traditionally has informed probable-cause determinations." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). I employ that test.

Officers O'Toole and Rentas received a tip from Rafael Perez, who had worked with the police as an undercover confidential informant since July, 1998. Perez had previously offered reliable information to the Boston Police which resulted in the arrest and conviction of different defendants. On May 3, 2000 Perez informed the police that a female would transport heroin by taking a bus from New York to Boston and that two people would follow the bus in a car. He relayed to the officers

that upon arriving in Boston, the female would take a cab to the International Restaurant and meet the two men who had followed the bus. *Jimenez*, 2007 WL 1946545, at *2.

On May 4, 2000, Boston Police Detective Renaldo Rentas observed a Hispanic female arrive at the International Restaurant in a taxi that had come from downtown Boston. He observed the female leave the restaurant, place a phone call on a payphone, and then return to the restaurant. *Id.* Forty minutes later, two Hispanic males, later determined to be Jimenez and Diaz, parked a vehicle with New York plates, met the female, and all three entered the restaurant. *Id.* Within several minutes, Rentas saw the man later determined to be Diaz, come out of the restaurant, make a phone call, and return to the restaurant. Ten minutes later, all three defendants left the restaurant.

Perez waved to the three defendants, who then proceeded to the vehicle with New York plates. They followed the vehicle in which Perez was a passenger and Sgt. Struthers of the Boston Police was driving.

Jimenez argues that the Boston Police, on the above factual basis, did not have probable cause to arrest him. He contends that the police only knew that he was associated with people whom the police had probable cause to believe were committing a crime. He argues that his mere presence did not give rise to probable cause.

-17-

Jimenez is correct, as a general legal proposition, that mere presence is at the scene of a crime is not sufficient to establish probable cause. *United States v. Di Re*, 332 U.S. 581, 587 (1948). In *Di Re*, an individual other than the arrestee was identified by an informant as the singular guilty person. "[A]ny inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." *Di Re*, 332 U.S. at 594. Here, however, Perez did not single any individual out as the lone guilty person.

Furthermore, the Boston Police relied on more than Perez's tip that another man would accompany Diaz. The police, in addition to receiving the tip, observed Jimenez arrive with Diaz, enter the restaurant with Diaz and Zorrilla, and later leave the restaurant with them. It is not unreasonable to assume that "criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetrate felonies before larger-than-necessary audiences." *United States v. Ortiz*, 966 F.2d 707, 712 (1st Cir. 1992).

In assessing the totality of the circumstances, I cannot find that the police lacked probable cause to arrest Jimenez.

Concluding that the state court's determination of probable cause is not contrary to or an unreasonable application of the law, I turn now to the search and seizure of the pager as resulting from the lawful arrest. "[I]t is difficult to perceive

-18-

what is unreasonable about the police's examining and holding as
evidence those personal effects of the accused that they already
have in their lawful custody as the result of a lawful arrest."
*United States v. Edwards*, 415 U.S. 800 (1974). *See also Barry v.*
*Ficco*, 392 F. Supp. 2d 83, 95 (D. Mass. 2005). A lawful arrest
will justify latitude in the search and seizure of things found
on the arrestee's person. *United States v. Sheehan*, 583 F.2d 30,
32 (1st Cir. 1978) (*citing Edwards*, 415 U.S. 800).

I find that the Appeals Court's determination that the
motion to suppress was not meritorious is neither contrary to nor
an unreasonable application of Supreme Court precedent.

**2. Prejudice**

Although a meritorious Fourth Amendment claim is required by
an ineffective assistance claim, it is not sufficient to earn a
petitioner habeas relief. *Kimmelman*, 477 U.S. at 380. Jimenez
must also demonstrate that, but for counsel's errors, the result
of the trial might have been different. *Id.* at 380. While I have
found no merit to Petitioner's Fourth Amendment claim, in the
interest of completeness, I will address the question of
prejudice from the failure to exclude the pager.

Jimenez concedes that "the truly damaging testimony came
from Zorilla," the female who had transported the heroin from New
York on the bus. The motion judge's memorandum denying Jimenez's
motion for a new trial observed that Zorrilla testified that

-19-

"Zorrilla and Jimenez were friends and Zorrilla met Diaz through [] Jimenez; Jimenez gave Zorrilla the address of the Jamaica Plain restaurant where they were to meet Perez; Jimenez told Zorrilla [sic] how to get from New York to Boston; and Jimenez gave Zorrilla one hundred dollars for transportation and gave Zorrilla the heroin in New York."  However, Jimenez argues that because the jury "spent a long time talking about something" during their deliberations, they must not have fully credited Zorrilla's testimony and because the pager was the sole piece of evidence suggesting Jimenez was involved as a more than a mere bystander, he was prejudiced by its inclusion in the evidence.

The motion judge, who had also presided over the trial, ruled that in the interest of public policy and respect for jury deliberations, the court would not look to the duration of jury deliberations to determine whether Jimenez had been prejudiced. She concluded that the Commonwealth's case was strong without the pager and Jimenez had not demonstrated any reasonable possibility that the jury verdict would have been different had the pager been suppressed.  On this basis, the motion judge denied Jimenez's motion for a new trial.

The Massachusetts Appeals Court did not reach the issue of prejudice because it disposed of Jimenez's claim when it found that the Fourth Amendment claim was not meritorious.

As a general proposition, the Federal law instructs the

-20-

courts to respect the sovereignty of jury deliberations and
refrain from speculation into the substance or form of those
deliberations. *United States v. Powell*, 469 U.S. 57, 67 (1984).
*See also Yeager v. United States*, 129 S.Ct. 2360, 2368 (2009)
(also noting that "to ascribe meaning to a hung count would
presume an ability to identify which factor was at play in the
jury room" and "such conjecture should play no part in assessing
legal consequences" of the verdict the jury returned).  While
there may be circumstances in which the duration of jury
deliberations, in relation to the weight of the evidence
presented at trial, may give a court reason to consider the
length of deliberation, I find that this is not such a case.[8]  I
conclude that even if the pager had been suppressed, given the
totality of the evidence presented at trial, especially including
Zorrilla's testimony, there is no reasonable possibility that the
verdict would have been different.

I conclude that the state court finding that Jimenez was not
prejudiced by the denial of the motion to suppress is neither
contrary to nor an unreasonable application of Federal law.

---

[8] The jury began deliberations at 12:55 p.m. on January 15,
2003, and after asking one question of the judge, returned a
verdict at 12:10 p.m. the next day.  The duration of the
deliberations here is as much an indication of careful
consideration of all the evidence as it is an indication of
potential uncertainty.  The question to the judge was: "What's
the difference between constructive possession and knowlingly
possessing. [sic]"

**CONCLUSION**

For the reasons stated more fully above, I GRANT the respondent's motion to dismiss.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE